# Brewer *v.* Ernest.

*Final Settlement of Guardian's Account.*

1. *Allowance for money paid.*—On the final settlement of a guardian's accounts, he being charged with rents collected from a tenant in common with the infant, should be allowed a credit for the amount of an account against the infant, admitted to be correct, which said tenant had paid, and which was allowed in his settlement with the guardian for the rents.

2 *Auditing claim against infant, and advising as to payment.*—The guardian having paid an outstanding claim of $500, incurred by his predecessor for the education of the ward, he is not entitled to a credit for "auditing said claim, and advising whether it should be paid," when it does not appear that any legal question was involved.

3. *Allowance of commissions on value of property.*—In the matter of

[Brewer v. Ernest.]

allowing commissions to a guardian on the value of the ward's property or estate surrendered on the termination of his trust (Code, § 2793,) the Probate Court is invested with a very large discretion, the exercise of which can not be reviewed by this court.

4.  *Lending out ward's money on note and mortgage.*—In lending out his ward's money on note secured by mortgage, the guardian should not only see that the security when taken is clearly and manifestly sufficient, but should also consider whether the money can be probably realized when wanted, without the expense of litigation ; or should provide in the mortgage itself for any expenses attending foreclosure.

5.  *Revision of probate decree on facts.*—In reviewing the decision of the Probate Court on a disputed question of fact, dependent upon oral testimony, the rule of this court is not to reverse, "unless it is so manifestly against the evidence that a judge at *nisi prius* would set aside a verdict rendered on the same testimony."

6.  *Interest against guardian.*—When a guardian lends out the money of his ward without taking sufficient security, he must be regarded as having used it on his own account, and he is chargable with interest on the amount.

APPEAL from the Probate Court of Lowndes.

Heard before the Hon. H. W. CAFFEY.

The points reserved in this case arose on the final settlement by appellant, Willis Brewer, of his guardianship of the estate of the appellee, Sallie K. Ernest. The final settlement took place in July, 1886 ; and there had been a partial settlement in January, 1886. The errors assigned, to which exceptions were duly taken by appellant in the court below, relate to both these settlements, and are as follows :

1.  "The court erred in decreeing the item of $43.10 (voucher 10 in the partial settlement of January, 1886), was an error, and in charging the same up against the guardian on final settlement."

2.  "The court erred in decreeing that the $10.00 (part of voucher 29 of the partial settlement of January, 1886) was an error, and in charging up the same against the guardian on final settlement."

3.  "The court erred in refusing to allow the guardian the commissions of $98.50 on the value of property (real) on final settlement."

4.  "The court erred in charging the guardian with the amount of the note and mortgage of J. G. McQueen and wife, and in not allowing the guardian a credit for the amount of said note and mortgage."

5.  "The court erred in charging the guardian with interest on the said note and mortgage from January 1, 1886, and in not allowing him credit for said interest."

The material facts as to voucher 10, referred to in the *first* assignment of error are stated in the opinion. Voucher 29, the disallowance of which is the basis of the *second* as-

signment of error, was for a fee paid to Brewer & Little (guardian's firm), for "settlement and examination of account of H. R. Raymond." The guardian testified, that the claim of Raymond was for three years' tuition, contracted by former guardian, amounting to about $700.00, on which payments had been made, leaving a balance due of about $500.00 ; that it was a long and itemized account, with interest running on it ; that he sought counsel of a competent attorney, his partner, who examined the account carefully, and that he paid the claim without compromise under the advice of said attorney.

The evidence, upon which the claim for commissions on the value of real estate, the subject matter of the *third* assignment of error, is based, relates only to the value of said realty, and tended to show that it was worth $3,960.00.

The note of J. G. McQueen and wife, referred to in the *fourth* and *fifth* assignments of error, was dated February 6, 1883, and payable January 1, 1884, to Brewer, as guardian, for the sum of $2,300.00, with interest from January 1, 1883, and contained a waiver of exemption. On the note was endorsed a payment, November 5, 1883, of $60.00, on the principal. The guardian testified, that the interest on the note had been paid annually to January 1, 1886, and the note had been extended to January 1, 1887 ; that the title to the lands embraced in the mortgage to secure the note, was good, and said lands, in view of their location on the edge of Sandy Ridge village, and the improvements thereon, consisting of two white settlements, a ginnery, &c., were worth $3,500.00 ; that he could not well collect the note, January 1, 1886, because there was a suit against McQueen for part of the lands pending in the Supreme Court of Alabama, which suit began in Lowndes Circuit Court in December, 1884, and was decided against McQueen in that court at the fall term, 1885, when he took an appeal to the Supreme Court, which was decided about June, 1886 ; that witness told the ward, that he would have her disabilities removed and make a final settlement of his guardianship in the winter of 1885-6, but could not make the settlement, because said suit was decided against McQueen at the fall term, 1885, of the Circuit Court, and the money on the note and mortgage could not be collected, and the ward's disabilities were not removed 'till March 3, 1886 ; that the money of the ward loaned by him to McQueen, had been applied, first, to paying a decree of about $1,000.00, in favor of Lehman, Durr & Co., against nearly all of McQueen's lands, which was a first lien thereon, and about $1,000.00 or more went to clear off a second incumbrance held by him-

[Brewer v. Ernest.]

self (the guardian), on a part of the land, and a part went to pay off a small lien on the land in favor of Giddens & Co., and he did not know whether there was any balance left; that he knew the value and title of said lands and regarded them as a safe and ample security for the loan, but that McQueen was generally in debt at the time of the loan, and now owed, perhaps, as much as $2,000.00 to Giddens & Co.

There was evidence on the part of the guardian tending to show, that the value of the lands and improvements in February, 1883, the time of the loan, was about $3,500.00; and one witness, W. B. Gilmer, testified, that they would now probably bring that amount at forced sale, as there were certain parties anxious to purchase them. The witnesses could not estimate the value of the lands without the improvements.

The sheriff was introduced as a witness by the ward, and his testimony and the records in the office of the clerk of the Circuit Court, showed, that on November 20, 1884, an execution for $282.00 against McQueen, was placed in the hands of the sheriff and levied by him on the lands of McQueen, and that McQueen claimed 160 acres of the land as a homestead, and the balance was sold by the sheriff for $100.00; and that, subsequently, July 18, 1885, another execution for $100.00 against McQueen was put in the hands of the sheriff, but he found the lands and personal property of McQueen under mortgage, and he could not collect this execution, and returned it "no property found."

CLEMENTS & BREWER, for appellant, cited, Code of 1876, Sec. 2772; *Taylor v. Bush*, 75 Ala. 432; Code of 1876, Sec. 2793, 2 sub-div. 1; *Allen v. Martin*, 34 Ala. 442; *Reed v. Newman*, 50 *ib.* 297; *Searcy v. Holmes*, 45 *ib.* 225; *Allen v. Martin*, 36 *ib.* 330.

GIRARD COOK, *contra*, cited, *Wilson v. Wilson*, 30 Ala. 670; *Jenkins v. Jenkins*, 33 *ib.* 731; *Allen v. Martin*, 34 *ib.* 442; and 36 *ib.* 330; *Neilson v. Cook*, 40 *ib.* 512; *Hutton v. Williams*, 60 *ib.* 133; *Lee v. Lee*, 55 *ib.* 598; *Lee v. Lee*, 67 *ib.* 406; *Newman v. Reid*, 50 *ib.* 299; *Harrison v. Mack*, 10 *ib.* 193; 2 Kent's Com., 230-1; *Lane v. Mickel*, 43 Ala. 109; *Kyle v. Barnett*, 17 *ib.* 306; 3 Wait's A. & D. 548-9, 550-2, 560, 567; 1 Perry on Trusts, 427-444; *Hughes v. Mitchell*, 19 Ala. 268; *Williams v. Harrison*, 19 *ib.* 277.

STONE, C. J.—We will confine our rulings in this case

to the errors assigned.    There are five special assignments, which we will take up in their order.

Brewer, as guardian of Miss Ernest, made an annual or partial settlement of his trust in January, 1886, at which time there was ascertained to be a balance of personal effects in his hands, amounting to a fraction over three thousand dollars ; all of which was reported to be out on loan, secured by mortgages.    In filing his account for final settlement, the guardian debited himself with said balance of three thousand dollars, ascertained to be in his hands in the partial settlement of January, charged himself with some small cash receipts, and claimed credits for said loans secured by mortgage, for some small disbursements, for certain commissions, and for the costs and expenses of settlement.    The final settlement was had in July, 1886, and from the decree on that settlement this appeal is prosecuted.

In the final settlement, several exceptions were filed to allowances which had been made in the partial settlement of January, and the rulings on them are the subject of some of the errors assigned.    The first error assigned is the disallowance of a credit of $43.10, claimed and allowed as voucher 10 in the January settlement.

We think the Probate Court erred in disallowing this credit.    True, it was paid in the first instance by Kendall; but Kendall did not lose it.    As tenant in common, and agent, he had collected rents, in which Miss Ernest, the ward, had a half interest.    The sum of half the collections of rent made by Kendall, he become, at once, liable to pay to Brewer as guardian.    When he came to pay Brewer, he did not pay in full.    He claimed, and was allowed certain cross demands against Miss Ernest, the ward, and among the rest, the account, voucher 10, paid to A. Meyer.    Instead of paying any money to Brewer, his charges against Miss Ernest—and no objection is raised to them—exceeded her share of the rents for which he was liable, by $183.56. So, Kendall in fact did not pay the rents to Brewer, but Brewer paid him this excess of charges he had against Miss Ernest.    This reached the same result as if each had paid the other the full amount of his claim in money.    It follows that if Brewer was charged in settlement with the rents Kendall had collected and accounted to him for, he was entitled to a credit for all proper claims Kendall had against Miss Ernest, which had been allowed as cross demands in Kendall's settlement with Brewer.    The testimony of the latter is positive that he had charged himself with all the rents collected, either through Kendall, or otherwise, and there is no testimony to the contrary.    The account current

shows considerable collections of rent during that time, with which the guardian was charged ; and we find nothing to weaken the force of his testimony stated above. If there was a failure by the guardian to debit himself with any of the rents collected, we are unable to detect it from the record.

The second assignment of error complains of the action of the court below, in disallowing $10.00 of the fifteen dollar credit, which had been allowed in the partial settlement as voucher 29. We do not think the Probate Court erred in this. That charge was based on the following state of facts :

Under the administration of the ward's estate by a former guardian, a debt had been created for her education, on which a balance of some five hundred dollars was claimed to be due. This account was paid by Brewer as guardian, and the charge of ten dollars is made for auditing said claim, and advising whether it should be paid. It is neither shown nor pretended that any legal question was involved in the inquiry. It would seem that the only matters to be inquired into were whether the debt was contracted, whether the charges were fair and reasonable, and whether or not the claim had been paid. These are questions which a personal representative must often decide and act upon in the administration of estates, and if there be nothing more in the transaction, no charge can be made for their performance beyond the commissions the law allows him. Such services are among the considerations for which commissions are given. We find nothing in this record to justify us in reversing the court's finding on this item. We must not, however, be understood as disallowing all counsel fees, even where no suit has been instituted or defended.—*Munden v. Bailey*, 70 Ala. 63, declares the correct rule.

The third assignment of error is based on the refusal of the probate court to allow to the guardian commissions on the value of the ward's real estate, surrendered to her on the termination of the trust. The statute, Code of 1876, § 2793, makes provision for such allowance, "if the judge of probate shall be of opinion that the same are not unreasonable under all the circumstances." This statute clothes the probate court with a very large discretion in all such inquiries, and matters of pure discretion can not be reviewed. There is nothing in this assignment.

The fourth and most important assignment of error complains of the refusal of the court to allow the guardian a credit for the note and mortgage of McQueen, given to secure the repayment of the money of the ward, loaned to him by the guardian. In form, the mortgage was not

[Brewer v. Ernest.]

objected to.   The real objection was and is, that the security was insufficient when taken, and yet is insufficient, and that the guardian knew the embarrassed condition of the borrower at the time the loan was made.

In making a loan of the money of his ward, the guardian must be as circumspect and prudent as an ordinarily prudent man would be in the loan of his own money.   It is common knowledge, with which we must be supposed to be familiar, that there is, and for many years has been, little or no difficulty in finding a customer of first class, and with the best of security, who is willing to borrow money at lawful interest.   And in placing a loan of this kind, the guardian should look, not alone to the sufficiency of the security, but should also consider whether or not, when the money shall be wanted, it can be probably realized without the expense of litigation ; or, he should provide in the mortgage that any expense attending the foreclosure shall be secured by the premises mortgaged.—2 Jones Mort. § 1606.

There is testimony in this record that the security, when taken, was sufficient,- and that it is yet so.   There is also testimony tending to show that the mortgaged lands, at forced sale for cash, would not yield enough to pay the debt.   The testimony was given orally before the court, and the court, ruling upon it, held that the guardian did not take sufficient security.   The testimony was not entirely in harmony, and it was alike the province and duty of the court to weigh it and determine its value.   When a fact is thus found by the trying body on oral testimony, the rule is not to reverse, "unless it is so manifestly against the evidence, that a judge at *nisi prius* would set the verdict aside, rendered on the same testimony."—*Nooe v. Garner*, 70 Ala. 443, and authorities cited.   If the issue on this item had been tried by a jury on the testimony brought to our view, and the jury had found in favor of the ward, we do not think the presiding judge on such trial would have felt himself called upon, or justified in setting the verdict aside.   There is nothing in the fourth assignment of error.

The fifth and last special assignment objects to the charge of interest against the guardian, after the making of the partial settlement in January, 1886.   Our ruling on the fourth assignment of error disposes of this objection.   By that ruling it is ascertained that the guardian, when he made the loan to McQueen, did not make it within the scope of his duties as trustee.   He must, therefore, be held to have used the money on his own account.   So using it, he must account for interest upon it, and the probate court did not err in charging him with interest.

The McQueen mortgage is not brought before us, and we can not know its provisions. This renders it improper for us to correct and render the decree the probate court should have rendered. The true inquiries on another trial will be, was the security when taken clearly and manifestly sufficient? Was it likely, when the loan was made, that the security could be made available without expense ; and if not, was provision made in the mortgage that the expense of foreclosure should become a charge on the mortgaged premises ?—2 Jones on Mort. § 1606 ; *McLester v. Somerville*, 54 Ala. 670 ; *Munter v. Linn*, 61 Ala. 492.

Reversed and remanded.