[Louisville & Nashville R. R. Co. v. Morgan, Adm'r.]

# Louisville & Nashville Railroad Company v. Morgan, Admr.

| 114 | 449 |
| 129 | 169 |
| 114 | 449 |
| 131 | 280 |
| 114 | 449 |
| 144 | 264 |

*Action against a Railroad Company by Administrator of Deceased Employè, to recover Damages for Alleged Negligent Killing of his Intestate.*

1. *Appeal; practice; when errors assigned will not be reviewed.*—When on appeal the overruling by the trial court of demurrers to the complaint is assigned as error, but in reference to such ruling the appellant's brief merely states that the demurrers to the complaint "set forth sufficiently the grounds upon which they were urged, and the correctness and rulings of the court thereon are, therefore, submitted without further argument," the rule that "errors assigned in civil cases, which counsel do not consider of sufficient importance to receive consideration by them, will be regarded by this court also as unimportant," applies; and the appellate court will decline to review the judgment of the lower court on the demurrers.

2. *Action against a railroad company for negligent killing of employé; demurrers to whole complaint properly overruled if bad as to any count.* In an action against a railroad company by the administrator of a deceased employé to recover damages for the alleged negligent killing of his intestate, where the complaint contains several counts, a demurrer thereto on the grounds that there is no allegation " in such complaint or either of said counts of any neglect of duty " the defendant owed the deceased, or of the names of the alleged negligent servants of the defendant, and " that it is uncertain as to whether the complaint and the several counts thereof is framed under the employés act, section 2590 of the Code, or at common law," such demurrer is laid against the whole complaint in its specifications, although the caption thereof is that " the defendant demurs to the complaint in this case, and to each count thereof separately and severally "; and such demurrer is properly overruled if bad as to any one of the counts of the complaint.

3. *Same; admissible testimony.*—In an action against a railroad company by the administrator of a deceased employé, where the complaint counts upon the negligence of the engineer in leaving his engine to the management of the fireman, and avers that said fireman negligently ran the engine against the car on which plaintiff's intestate was, resulting in his death, it is permissible for the plaintiff to show where the engineer was at the time of the accident, as that he was some distance from the depot, the location of the depot in respect of the engine being shown ; such evidence being material to the issue formed under the complaint, and, therefore, relevant and admissible,

[Louisville & Nashville R. R. Co. v. Morgan, Adm'r.]

4. *Same; when rulings upon evidence will not be reviewed on appeal.*
On an appeal from a judgment rendered in an action brought against
a railroad company for the alleged negligent killing of plaintiff's in-
testate, where the appellant assigns as error that the trial court re-
fused to allow it to ask a designated witness the following questions:
" He was there in charge, was n't he, of the train all the time? Was
n't he the one giving directions? " and it is not shown by the bill of
exceptions to whom these inquiries referred, such ruling of the trial
court is not so presented as to allow the appellate court to intelli-
gently review it, and it will, therefore, not be revised.

5. *Same; when rule of railroad company admissible in evidence.*—In
an action against a railroad company by the administrator of a de-
ceased employé to recover damages for the alleged negligent killing
of plaintiff's intestate, while in the discharge of his duties as a brake-
man, where the complaint avers the negligence of the engineer in
leaving his engine to the management of the fireman, and that said
fireman negligently ran the engine against the car on which intestate
was, a rule of the defendant company to require " enginemen " to use
great care in switching and handling their trains to avoid injury, is
admissible; the fireman in charge of the engine being, for the time,
an "engineman" within the meaning of the rule.

6. *Same; same.*—In such a case, a rule of the defendant company
that the firemen might handle the engine at stations in the necessary
absence of the engineer, is admissible in evidence to show that, on
the occasion of the intestate's death, the fireman was handling the
engine by authority of the defendant.

7. *Measure of damages.*—In an action to recover for the death of
plaintiff's intestate, alleged to have been caused by the wrongful act
of the defendant, the amount that the intestate was expending for
the education and maintenance of his young brother, and the money
he was saving and investing in land from month to month, should be
considered by the jury in determining the damages sustained by the
intestate's next of kin, and should not be deducted from the gross
earnings of the intestate.

8. *Charge to the jury; should not single out the evidence of any partic-
ular witness.*—Charges to the jury which instruct them that if they
believed the testimony of certain witnesses, or did not believe the
testimony of another witness, they should find for the defendant, are
properly refused.

9. *Action against railroad company for the negligent killing of em-
ployé; sufficiency of evidence for admeasurement of damages; charge to
the jury.*—In an action against a railroad company, by the adminis-
trator of a deceased employé to recover damages for the alleged neg-
ligent killing of his intestate, where there is before the jury evidence
as to the intestate's age, habits, working and earning capacity, and
the disposition of his earnings, this evidence, together with the jurors'
common knowledge as to his life's expectancy, is sufficient data for
the admeasurement of damages, if the jury should find that he came

[Louisville & Nashville R. R. Co. v. Morgan, Adm'r.]

to his death by reason of actionable negligence on the part of the defendant; and a charge in such case, instructing the jury that under the evidence they could not find more than nominal damages for the plaintiff, is properly refused.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

James S. Morgan, the administrator of Rufus King, deceased, brought the present action against the Louisville & Nashville Railroad Company, to recover damages for the death of the plaintiff's intestate, who was, at the time, a brakeman on one of the defendant's trains.

The complaint as amended contained five counts. The first count, after averring the operation of trains by the defendant and the employment of the plaintiff's intestate as a brakeman on one of its local freight trains, and that while at a station along its line of road the plaintiff's intestate was directed to uncouple certain cars from the train, in order that they might be switched upon a side track, and that in obedience to his orders, plaintiff's intestate took his position at the brake on one of the cars, as was his duty to do, further averred that "the servants or employés of the defendant, in charge of the engine putting said train, ran said engine and the cars thereto attached backwards so carelessly and negligently with such great force against said two cars on which plaintiff's intestate was riding, whereby he was unbalanced, and thrown from his position on top of said cars to the ground, between said cars and was run over by said cars, and by them bruised, and crushed, so that he died from the effects thereof."

The prefatory allegations of the second count were substantially the same as those contained in the first; and the allegations of negligence in the second count were as follows: "Defendant's servants in charge of said engine and section of cars carelessly and negligently drove said engine and section of freight cars back against the cars on which plaintiff's intestate was manning said brake, with such force that he was thrown from said cars to the ground, and run on and over by said section of cars and crushed, bruised and cut so that he died from the effects thereof."

In the third count, after alleging that the train upon which the plaintiff's intestate was employed as a brakeman was under the superintendence of a conductor and

engineer the count alleged that while the plaintiff's intestate was in the discharge of his duty in making the switch at a station along the line of the railroad, "said conductor and engineer both negligently and carelessly left the train and the superintendence thereof, and left the management of said engine and train of cars to a fireman, who ran said engine and a section of cars attached thereto negligently and carelessly with such force against two freight cars on which plaintiff's intestate was at the time, in discharge of his duty under his employment, that he was thrown from the top of said cars to the ground under said cars, and drove said cars over him, by which he was crushed, cut and bruised, from which he died."

In the fourth count the averments of negligence were as follows: "Plaintiff avers that said King was so killed by reason of the negligence of one Hollis Wright, who was then and there in the employment of the defendant as engineer of said train; and plaintiff avers that said Wright was guilty of negligence in this, that he left said train in control and charge of a fireman to do and perform his, the said engineer's work, and went off several hundred yards, to-wit, 300 yards, from his said engine. And plaintiff avers that said fireman, who was in the employ of the defendant as such fireman, so negligently managed said engine and locomotive, as to knock the said King from said car, whereby he was killed."

In the fifth count, after alleging that the fireman on the engine, who was left in charge thereof, was handling the engine and switching the cars on which the plaintiff's intestate was engaged at the time of the injury, it was further averred: "And plaintiff avers that said injuries were so suffered by reason of the negligence of said fireman, and that said fireman was so negligent in this, that he so managed said engine and locomotive as to strike the car on which the plaintiff's intestate was then and there so in discharge of his duty, and knocked him therefrom, to the damage of the plaintiff as aforesaid."

To the complaint the defendant demurred upon the following grounds: "1. There are no facts alleged in said complaint or in either of said counts which show with sufficient certainty the neglect of any duty the de-

fendant owed the plaintiff's intestate in the premises. 2. The facts alleged in said complaint and in each of said counts fail to show with sufficient certainty the neglect of any duty the defendant owed the plaintiff's intestate in the premises. 3. There is no allegation in the complaint or in either of said counts of the names of defendant's servant alleged to have had charge of the engine, whose negligence it is alleged caused the injury to the plaintiff's intestate. 4. It is uncertain as to whether the complaint and the several counts thereof is framed under the employés act, section 2590 of the Code, or at common law. 5. The allegations of the complaint and of each of said counts are too uncertain and indefinite.''

This demurrer was overruled, and subsequently the defendant filed a demurrer as follows : "The defendant demurs to the complaint in this case and to each count thereof separately and severally, and sets down and assigns the following causes of demurrer thereto :" and then follows the same grounds of demurrer as were previously filed. These demurrers were overruled ; and the defendant pleaded the general issue and by special pleas the contributory negligence of the plaintiff's intestate.

It was shown by the evidence that the plaintiff's intestate was at the time of his death employed by the defendant as a brakeman on a local freight train, and that he was killed at Warrior, a station along the line of the defendant's road ; that he was in the discharge of his duties in making a switch at said station, as he had been directed to do by the conductor, and that while he was on top of one of the freight trains (having gone there for the purpose of setting a brake), he fell between the cars and was run over and killed. At the time of the accident, the engine was being run by one Cunningham, who was the fireman ; Hollis Wright, the engineer, being off the engine somewhere about the station.

The evidence for the plaintiff tended to show that the plaintiff's intestate was thrown from the top of the car by reason of the car being pushed suddenly and violently, and that this was caused by the negligent way in which the engine was manipulated by the fireman.

The testimony for the defendant tended to show that the fireman was competent to handle the engine in switching, and that he was not negligent in any way at the time the plaintiff's intestate was killed.

The plaintiff as a witness testified that he knew the deceased, and that at the time of his death he was in his 25th year; that he was a sober, hardworking and industrious man, and brought home about $25 per month from his wages; that he spent part of his money in educating his young brother, and part in making payments on property he had bought in the town of Amory, Mississippi. One of the witnesses for the plaintiff testified that one month the deceased drew $64 as salary, while the testimony of the conductor of the train on which the plaintiff's intestate worked, testified that he earned about $58 or $59 per month.

J. C. Blackburn, a witness for the plaintiff, testified that he was at Warrior at the time the plaintiff's intestate was killed; that Hollis Wright, the engineer, was about 200 or 250 yards from the engine and train at the time of the accident. Upon the witness further testifying that engineers, upon the arrival of trains at Warrior, would get their orders in the depot, the plaintiff then asked the witness the following questions: "How far was Hollis Wright from the depot when King was killed? What is your best judgment about the distance?" The witness answered: "My best judgment is that it would be about 150 feet." The defendant thereupon moved the court to exclude the answer of the witness, on the ground that it was irrelevant, incompetent and illegal. The court overruled the objection, and the defendant duly excepted.

The plaintiff offered in evidence Rule 203 from the book of rules used by the defendant, which rule was as follows: "203. They, enginemen, are held responsible for the proper management of their engines, and must use great care in switching and in the handling of their trains to avoid danger to property and injury to persons, and must avoid all unnecessary jerking." The defendant objected to the introduction of this rule, on the ground that it was irrelevant, incompetent and immaterial. The court overruled the objection, and the defendant duly excepted. Against the objection and exception of the defendant, the plaintiff then offered Rule 209 from the same book, which rule was in words and figures as follows: "209. It is the duty of an engineman to handle his engine at all times; but a fireman may handle at a station in the immediate presence of

the engineman, or when from necessity the engineman is absent temporarily, provided the master mechanic has declared him competent." The other rulings upon the evidence are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked : (1.) "In determining the accumulations at the end of the expected term of life of Rufus King, you should deduct from his gross earnings not only the amount he would expend in his own support and maintenance, but also the amount he was expending in the support and maintenance of his brothers." (2.) "Unless you shall believe the evidence of Ross Hughes, you should find for the defendant." (3.) "If you believe the testimony of the witness Thomas, you must find for the defendant." (6.) "Under the evidence in this cause you cannot find more than nominal damages for the plaintiff." (8.) "If from the evidence you can find what amount Rufus King was earning at the time of his death, then in determining what his net earnings were at such time you must deduct from his gross earnings not only what he expended in his own support and maintenance, but also what he has expended in the support and maintenance of his brother, and also the amount he was expending yearly in payment for the lot at Amory, Miss." (10.) "If you believe the testimony of the witnesses, Thomas, Cunningham and Pole Gunn as to the manner in which the detached cars were kicked or shoved into the siding, and disbelieve the testimony of Ross Hughes as to the manner in which the detached cars were kicked or shoved into the siding, then you must find for the defendant." (11.) "If you believe from the evidence that Rufus King was expending at the time of his death in his own support and maintenance thirty-five dollars per month, that at such time he was also expending in the support and maintenance of his brother $25 per month, and that at such time he was expending thirty-three dollars a year in paying for the lot at Amory, Mississippi, then I charge you that in determining what the net earnings of Rufus King were per year at the time of his death you must deduct from his gross earnings for the year not only four hundred and twenty dollars on account of his

own support and maintenance, but three hundred dollars on account of the support and maintenance of his brother, and thirty-three dollars on account of the payments being made on the lot." (12.) "If you believe from the evidence that Rufus King, at the time of his death, was expending in his own support and maintenance $35 per month; that at such time he was expending on the support and maintenance of his brother $25 per month, then I charge you in determining what the net earnings of Rufus King were per year at the time of his death, you must deduct from his gross earnings per year not only $420 on account of his own support, but also $300 on account of the support and maintenance of his brother." (13.) "If you believe the evidence, you must find for the defendant."

There were verdict and judgment for the plaintiff, assessing his damages at $1,083.50. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOMAS G. JONES, for appellant, cited *H. A. & B. R. R. Co. v. Walters*, 91 Ala. 440 ; *L. & N. R. R. Co. v. Orr*, 91 Ala. 548.

No counsel marked as appearing for appellee.

McCLELLAN, J.—The complaint contains several counts each claiming damages from the defendant railroad company for negligence of its servants whereby plaintiff's intestate, a brakeman in defendant's service, was killed. There were demurrers to the complaint assigning several grounds, which were overruled by the court. Of this ruling, only this is said in appellant's brief : "The demurrers to the complaint, on pages 7 and 8 of abstract, set forth succinctly the grounds upon which they were urged ; and the correctness of the ruling of the court thereon is, therefore, submitted without further argument." This reference to the ruling on demurrer is not a discussion of it by counsel, and presents no obstacle to the application of the rule that "errors assigned in civil cases which counsel do not consider of sufficient importance to receive consideration by them will be regarded by this court also as unimportant."— *Henry et al. v. Hall*, 106 Ala. 537. We might, therefore,

decline to review the judgment of the lower court on the
demurrer. But the first demurrer interposed confessedly
went to the whole complaint, and no ground assigned is
good against each of its counts. Indeed, but one of the
assignments is well taken against any of the counts, and
that is bad as applied to one of them. And the demur-
rer last filed, while it professes in its caption to go to
the complaint "and each count thereof, separately and
severally," yet is really laid against the whole complaint
in its specifications; and is certainly bad as to some of
the counts, if indeed any of them are open to any of the
objections taken by it.

The third count avers the negligence of the engineer
in leaving his engine to the management of a fireman,
and that said fireman negligently ran the engine against
a car on which intestate was, &c., knocking him off,
&c., and killing him. With this averment as to the en-
gineer in the case, we are unable to see that the court
erred in allowing plaintiff to prove by the witness Black-
burn where the engineer was at the time the engine was
propelled against the car on which intestate was, as that
he was at a point distant one hundred and fifty feet or
more from the depot, the location of the depot in re-
spect of the engine being shown. Moreover, the where-
abouts of the engineer was a material fact under those
counts which aver that the fireman was in charge and
control of the engine at the time of the casualty.

Defendant asked the witness Hughes on cross-examin-
ation, the following questions: "He was there in charge,
wasn't he, of the train all the time? Wasn't he the one
giving directions?" The abstract does not advise or aid
us in determining who was referred to in these inquiries;
the identity of "he" is left to conjecture. If the same
uncertainty obtained in the lower court, it affords a suf-
ficient justification for its refusal to allow the questions
to be answered. As it is presented here we cannot
intelligently revise the ruling below. If, as counsel
assume, these questions had reference to the intestate,
they called for immaterial testimony. Conceding him to
have been in charge of the train and giving directions
as to the switching operations being carried on, there is
no pretense that any signal or direction he gave was
negligent or contributed proximately to his death. The
gist of the action is not that the fireman moved his en-

gine, but that he carelessly and negligently moved it; and the intestate's proper signal for him to move it affords no excuse for him or defense to the company for the improper manner in which he obeyed the signal.

Rule 203, put in evidence by plaintiff, has reference not only to regular engineers but to firemen temporarily in charge and control of engines; they, for the time, are "enginemen" within the rule. The pertinency of the rule as thus construed is obvious. Rule 209 was pertinent as showing that the fireman on the occasion of intestate's death was in charge and control of the engine by authority of the defendant.

What the intestate was expending on his young brother, distributee of his estate, was to be considered by the jury in determining the damages sustained by the next of kin by his untimely death.—*L. & N. R. R. Co. v. Trammell*, 93 Ala. 350. And, obviously, the money he was saving and investing in land from month to month, and which presumably he would have continued to save, should be taken into account. Charges 1, 8, 11 and 12 asked by the defendant were, therefore, properly refused.

Charges 2 and 3 asked by defendant were bad for singling out the evidence of one witness, and instructing the jury (2) to find for defendant if they did not believe the evidence of the witness Hughes, and (3) to find for the defendant if they believed the evidence of the witness Thomas. Moreover, a verdict for defendant would not, as a matter of law, follow from either of the conclusions of fact thus hypothesized. Charge 10 is likewise faulty.

The facts admitted in evidence before the jury as to intestate's age, habits, working and earning capacity and the disposition of his earnings, together with the jurors' common knowledge as to his life expectancy afforded data for the admeasurement of damages, if the jury found that he came to his death by reason of actionable negligence on the part of the defendant; and charge 6, confining the recovery to nominal damages, was properly refused..

The charges which were to the effect or proceed on the idea that the intestate was guilty of proximate contributory negligence as matter of law were properly refused.

At most the evidence on that subject tended to show such negligence, and the question was for the jury.

Affirmed.