# McCreary, *et al. v.* Billing, *et al.*

*Bill for Sale of Infant's Land and Reinvestment of Funds.*

(Decided April 11, 1912. 58 South. 311.)

1. *Infants; Sale of Realty; Jurisdiction.*—Equity has jurisdiction to decree the sale of the lands of infants, not only for their maintenance and education, but for reinvestment of the proceeds for the general interest and advantage of the infant, whether the estate of the infant is one of present possession and enjoyment or a reversion or remainder, although the courts are reluctant to decree the sale of a future or contingent estate.

2. *Same.*—Where the land in which the infants had an interest is worth not more than $80,000.00 and produces an annual income of not more than $4,800, and it can be leased to an adjoining owner for twenty-five years at an annual rental of $6,000, with an option to the lessee to buy at the expiration of the leasehold term for $100,000.00, with a provision that the lessee shall erect a building thereon to cost not less than $100,000, equity may authorize such a lease, under Acts 1911, p. 24, amending section 3418, Code 1907, as such lease will be to the interest of the minor.

3. *Trusts; Guardian and Ward; Sale and Reinvestment Under Direction of the Court.*—Courts of equity will permit trustees and guardians to change the character of the trust property when manifestly for the benefit of the infant, and if asked, will ratify such change where it would have authorized it in the first instance.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Bill by Samuel E. McCreary and others against Mollie Billing and others, for a sale of land and reinvestment of funds, and to fix the reversionary interest of the minors therein. From a decree sustaining demurrers to the bill complainants appeal. Reversed, rendered and remanded.

STEVENS, LYONS & DEAN, for appellant. There is no question about the jurisdiction of the court to decree a sale of the real estate of infants either for maintenance and education, or for reinvestment.—*Ex parte*

*Jewett,* 16 Ala. 410; *Goodman v. Winter,* 64 Ala. 434; *Thorington v. Thorington,* 82 Ala. 490; *Gassenheimer v. Gassenheimer,* 108 Ala. 652. A life tenant can be required to expend upon the property no more than the income derived therefrom.—16 Cyc. 632. In passing upon whether or not the transaction will be of benefit to the minor, the court is bound to take the practical view of the situation, and consider it as it would be considered by a competent business man. When so considered, the case made by the bill presents an excellent investment for the minor.

J. H. WEBB, for appellee. Counsel agrees that the proposition is an admirable one for the minors but in order to raise and determine the question and thus protect the interest of the minor as well as the purchaser, he files the demurrers which were sustained to the bill. He does not doubt the jurisdiction of the court to determine the matter involved, and to enter a decree effectuating the purposes of the bill.

ANDERSON, J.—"It has long been the settled doctrine in this state that it is within the original jurisdiction of courts of equity to decree the sales of lands of infants, not only for their maintenance and education, or to remove incumbrances, or to satisfy charges resting thereon, but for the investment of the proceeds of sale for the general interest and advantage of the infant.—*Ex parte Jewett,* 16 Ala. 409; *Rivers v. Durr,* 46 Ala. 418; *Goodman v. Winter,* 64 Ala. 410, 38 Am. Rep. 13; *Thorington v. Thorington,* 82 Ala. 489, 1 South. 716. The exercise of the jurisdiction is not dependent on the nature and quality of the estate of the infant, whether it is an absolute estate of present possession and enjoyment, or a future estate, a reversion, or remainder,

though as was said in *Goodman v. Winter,* 64 Ala. 410, 38 Am. Rep. 13, because of the uncertainty of the value of a future or contingent estate, lest there should be a sacrifice of the interests of the infant, the court would be the more reluctant to decree a sale. The reason underlying the doctrine is that, as the infant labors under disability, is incapable of managing and disposing of property, the court owes to him the duty of protection, and of controlling and administering his .property, so as to promote his convenience and interests —a similar reason to that which prevails when the court decrees a sale for his maintenance and education. When sales have been decreed for the mere purpose of otherwise investing the proceeds, it has generally been because the lands were deteriorating in value, and from some cause probably subject to continuous deterioration, or because they will not yield income sufficient to keep down burdens to which they are liable, or the income was greatly disproportionate to their market value."—*Gassenheimer v. Gassenheimer,* 108 Ala. 651, 653, 18 South. 520, 521.

It is also the rule in this jurisdiction that, when it is manifestly for the benefit of an infant, courts of equity will permit trustees and guardians to change the character of his property; and if, without the authority of the court, the change is made the court will sanction and confirm it, if, under the circumstances, it would have decreed the change.—*Goodman v. Winter, supra.* As far back as the year 1818, the New York Chancery Court, speaking through the then chancellor, in the case of *Mills v. Dennis,* 3 Johns. Ch. (N. Y.) 367, in discussing the power and authority of said court over the estates of infants, said: "The court may change the estate of infants from real into personal, and from per-

sonal into real, wherever it deems such a proceeding most beneficial to the infant."

It would thus appear that the primary consideration is the interest of the infant; and, applying the rule as heretofore adopted by this and other courts, we hold that the chancery court has the power to order the sale in question, if the proof shows that it would be to the interest of the owners, and especially the infants. There can be no doubt but what the chancery court would decree a sale of the property for division or reinvestment, under the averments of the present bill, if the sale was to go into effect and the money should be paid over eo instante, as the bill avers that the price offered is $20,000 in excess of the real, ordinary market value of the property, and is only worth the price offered by the City Bank & Trust Company, because of its peculiar location and close proximity to the same, and is worth more to said company at this particular time than it would be to any one else. If, therefore, the chancery court could and would decree a sale to go into effect at once then the conditional feature of the present offer, in postponing the final consummation to 25 years, in the nature of a lease, with the option of buying at the fixed price, should not be an obstruction, in view of the many advantages to be derived therefrom to the owners, as appears from the averments of the bill. If the chancery court has the power to sell, it would have the power to lease; and, while the life of the lease exceeds the limitation fixed by the Code, it is within the period fixed by the Act of 1911, p. 24. While the sale is conditional, and the 25-year period is designated as a lease, with the option to purchase upon the expiration of said lease, it is, in all human probability, a sale with a mere postponement of 25 years for the payment of the purchase money, with the annual pay-

ment of 6 per cent. net or $6,000 per year as interest. It may be true that the City Bank & Trust Company reserves the option to purchase at the end of the period of 25 years for $100,000, and does not bind itself absolutely to do so; yet the contract requires the erection, by it, of a building to cost not less than $100,000, and it is hardly probable that it will decline to purchase, and if it does said building will become the property of the present owners.

The lease feature, however, is peculiarly beneficial to the owners, and especially to the infant girls. It guarantees them a nice income, free from care or trouble, with ironclad security for same, until they reach middle life—the age of wisdom and discretion. The income from the property is largely increased, and they are relieved of the care and control of same, as well as all danger of a loss, deterioration, destruction, or possible condemnation of the old building, which will not bear an amount of insurance commensurate with the amount invested in the property or offered for same, and which they cannot replace, in case of a destruction or condemnation of same, except upon borrowed capital. The lot will, no doubt, enhance in value, if bought by the City Bank & Trust Company, after the proposed building is erected, and it is made a part of its present building, thus focalizing its capital and influence towards the upbuilding of this particular spot or locality.

But what assurance is there that the lot will naturally enhance in value, should the City Bank & Trust Company purchase a lot adjoining another part of its building or elsewhere, and directs its capital and influence towards the upbuilding of another section or locality? If this last contingency should arise, the lot may decline in value, may drop back to its normal value, or go even lower, and the owners would also be in imminent

[McCreary, et al. v. Billing, et al.]

danger of having to replace, at no distant time, the present building, in order to derive a proper income from the property, and which will have to be done with borrowed capital. On the other hand, it may be assumed that the lot will increase in value to the extent of 50 per cent. during the 25-year period; still there would be no loss to the present owners. Under the present arrangement, they will get $6,000 per year net; while they are now getting but $4,800 per year gross. Deduct from the present income, the tax, insurance, and, perhaps, the commissions of a rental agent, to say nothing of the needed annual repairs, and the said income would doubtless be cut down to $4,000 per year or less, thus making a difference of at least $2,000 per year, or $50,000 for the period of 25 years—the period covered by the said lease; and, with interest thereon compounded, it would, no doubt, overcome any probable enhancement in the value of the lot, and which said enhancement is much less probable, if the present offer is rejected. We are of the opinion that the bill contains equity; and if the material averments of same are proven the relief sought should be granted. The law and equity court erred in sustaining the demurrers to the bill, and its decree must be reversed, and one is here rendered, overruling said demurrers, and the cause is remanded.

Reversed, rendered, and remanded.

DOWDELL, C. J., and SIMPSON, SAYRE, and SOMERVILLE, JJ., concur. MCCLELLAN and MAYFIELD, JJ., not sitting.