179 So. 639

**HALL v. ESSLINGER.**

**8 Div. 819.**

Supreme Court of Alabama.

March 10, 1938.

Douglass Taylor, Wm. E. Davis, and J. D. Smith, all of Huntsville, for appellant.

453

Thos. W. Layne and Francis Esslinger, both of Huntsville, for appellee.

GARDNER, Justice.

In July, 1924, W. F. Esslinger was duly appointed and qualified as guardian for the estate of Curtis C. Crimes, a non compos mentis. The estate of the ward consisted of a payment of a lump sum of $860.68 from the Veterans' Bureau of the United States government, followed by monthly payments ranging from $20 to $80. Partial settlements were passed and allowed by decree of the probate court in October, 1925, September, 1927, August, 1928, September, 1931, and one filed in August, 1932, and allowed in April, 1934. In July, 1935, upon the guardian's application, the administration of the ward's estate was removed into the Madison circuit court, in equity, by decree duly entered, and in February, 1936, an order of reference was entered on the partial settlement filed and supplemental report presented by the guardian in August, 1936, when the register made his report stating the account of the guardian. The guardian in the same month tendered his resignation, which was accepted by the court, effective December 7, 1936, on which date the guardian filed his accounts for final settlement of the estate.

In May, 1937, upon testimony orally taken before the chancellor, a decree was entered sustaining the register's report on reference, passing and allowing the accounts' for final settlement, except in one respect relating to an investment in what is known as the Randolph street lot amounting to $363, with which the guardian was charged with added interest. The guardian ad litem filed objections to the final settlement account, and counsel for the Adminis-

trator of Veterans' Affairs were permitted to intervene and also file numerous objections, and appear at the hearing. This appeal is by the newly appointed guardian, and counsel for the Administrator of Veterans' Affairs have filed brief in addition to that presented by the guardian.

The evidence, for the most part, consisted of the testimony of the guardian, Esslinger, who was very closely examined before the chancellor upon practically every investment made by him as guardian during the more than eleven years of his administration. The record indicates the usual conscientious and painstaking care the learned chancellor gave to the testimony. The record is voluminous, and has likewise been here read and studied with much care.

■ Brief by counsel for appellant argues certain defined assignments of error which present material matters here to be considered, which brief we have studied in connection with that presented by counsel for the Administrator of Veterans' Affairs. Elaborate discussion we deem unnecessary. At the outset, it may be observed that counsel for appellant appear to erroneously assume that the guardian in taking a mortgage on real estate, payable to himself as guardian, as security for a loan, violated the provisions of sections 8168, 8169, Code of 1923, relating to the investment of the funds of the ward in the purchase of real estate. But this question was here very recently considered, Kelly v. Wilson, 234 Ala. 455, 175 So. 551, and any such theory repudiated. The cited authority suffices for this purpose without further discussion.

■ Another legal principle, well understood, may also be here noted. Many, and indeed a larger portion of the objections, relate to matters embraced in partial settlements passed and allowed by decree of the probate court. Items on such accounts are presumably correct, and the burden is upon the objector to show they are improper either in fact or law. Cunningham v. Cunningham, 215 Ala. 484, 111 So. 208; Walsh v. Walsh, 231 Ala. 305, 164 So. 822.

■ And upon the matter of investments, the guardian in making loans should require security, and if the loan is made upon the credit of the borrower alone, he hazards the money of the ward, departs from his line of duty, and becomes an insurer against loss to the ward. Cunningham v. Cunningham, supra. And when the character of investment or loan is prescribed by statute, the guardian may lawfully invest only in such security as is prescribed, and if he departs from this course, he does so at his peril, and his good faith is no excuse for the loss sustained to the ward's estate. White v. White, 230 Ala. 641, 162 So. 368.

■ But acting within his authority in this respect, "the rule is well settled that a guardian making an investment for his ward is bound to act honestly and faithfully and exercise a sound discretion such as men of ordinary prudence and intelligence use in their own affairs, and if he is negligent in this respect he must answer for any resulting loss. He is not, however, an insurer of the safety of the investments, and if he acts in good faith, using due care and prudence and having regard to the best pecuniary interest of the ward, he will not be liable for any loss arising out of the transaction, although he may have committed an error of judgment in respect to the transaction out of which the loss arose." 28 Corpus Juris 1143; Brewer v. Ernest, 81 Ala. 435, 2 So. 84.

■ But the authorities are also to the effect that mere negligence of the guardian does not charge him with liability where no loss to the estate of the ward resulted therefrom. 28 Corpus Juris 1133 and 1141; Williams v. Harrison, 19 Ala. 277. And this rule has here been extended to the matter of compensation where the guardian not only failed to make partial settlement, but was guilty of a willful default in the matter of final settlement. The estate, however, suffered no loss, and the guardian was allowed his commission under the rule that to deprive him of his compensation he must have been "guilty of gross negligence or willful default, whereby injury has resulted to the estate." Spies v. Stikes, 112 Ala. 584, 20 So. 959, 961.

■ And if a guardian makes an investment for his ward, without a court order which should first have been procured, the equity court, in which the administration is pending, has the authority to sanction and confirm it, if under the circumstances the court would have decreed the investment in the first place. 28 Corpus Juris 1140; McCreary v. Billing, 176 Ala. 314, 58 So. 311, Ann.Cas.1915A, 561; Roche v. Slocumb, 206 Ala. 223, 89 So. 491, 493. Or, as said in this latter case, "Courts of chancery do not condemn such anticipatory action merely because it is a usurpation of

authority, but, on the contrary, they will sanction and confirm it, if, under the circumstances, it was beneficial to the ward's estate."

The foregoing general principles of law are not of course here controverted, and should suffice for the purposes of this appeal.

Coming to the assignments of error argued by appellant, the first discussed relates to a loan to Ethel B. Finley on the Oakwood avenue property. This investment originated in a loan of $400 on a second mortgage on the property, which was accounted for and passed on partial settlement. Perhaps as a loan on a second mortgage such investments are not to be encouraged; yet it is not made to appear that the investment was not justified by the value of the property. The guardian was an attorney and often negotiated loans for his clients. He was doubtless familiar with the property, and with his ability to secure the perfected title should the necessity arise. This was in fact done, as he later invested for the ward an additional sum of $750 in a purchase of the first mortgage, which was later followed by a deed in lieu of foreclosure. Rents were collected, and the property sold to one Marsh for $1,150; the purchaser to pay insurance, taxes, and interest upon the principal at 6 per cent. per annum. This sale was ratified and approved by the court. Appellant questions this investment upon the assumption the ward's estate has suffered a loss, but the record does not sustain such assumption. The guardian himself had a third mortgage, consisting partly in brokerage fees and in part some money advanced, and this security was lost to him in the final conclusion of the matter. Though the guardian may have represented the first mortgagee and charged a brokerage fee, appellant would infer the investment for the ward was for his own benefit. There was nothing, in these previous dealings, however, to preclude the investment if it was otherwise sound, and any such argument must rest in inferences only.

The chancellor heard the testimony of the guardian in relation to this investment, and approved the same. No evidence was offered by appellant tending to show the property was not of sufficient value to justify this investment, and we find no justification for here disturbing the ruling in this respect.

The next argued assignment (No. 10) relates to the "Pump Street Property," and, likewise, was a purchase of a second mortgage for $280 on the property, followed by the purchase of the first mortgage for $139.75, and these mortgages were subsequently foreclosed and the property sold to one Wade for $600; $100 of which was paid and the balance secured by a mortgage for $520. Wade died and his mortgage was foreclosed for the principal and interest due, and the property sold under contract of sale for $800, which sale contract was duly approved by the court. This investment shows a clear profit to the ward's estate, and it is clear enough the ruling in this regard should not be disturbed.

The eighteenth assignment relates to a second mortgage loan to Henry W. Kolle and others for $300 upon eighty acres of land, and a purchase of the first mortgage for $227. Payments were made and the guardian has a first mortgage for $503 on this eighty acres of land valued at $1,200. There is no evidence whatever reflecting upon the soundness of this investment.

Assignment 22 refers to a loan of $150 to Rosa Brazelton secured by mortgage on real estate. This, loan was made in 1928. The guardian's testimony is to the effect this loan was repaid in August, 1929. Appellant insists the principal is unaccounted for, but we think it is clear the partial settlement of 1931 accounts for the principal of this loan as included in the balance brought forward from the previous settlement, with which the guardian was charged, as it discloses a sum left in his hands equal to this balance.

These observations are likewise applicable to assignments 21, 23, and 24, which need no separate treatment.

Objection is made to the payment of $10.60 by the guardian as taxes for Felix Crimes, the father of the ward, and with whom the ward lived. Of course, as argued, a guardian has no right to pay taxes on property owned by another. Teague v. Corbitt, 57 Ala. 529. The guardian was paying the father $40 per month for board and lodging for the ward. It seems now the sum is increased to $50 per month. The guardian says, he did this for the ward's advantage, in the protection of the property of the ward's father from sale and that there be no disturbance in that regard.

The chancellor evidently viewed the matter in this light, and perhaps also that the amount for board and lodging could well have been then increased sufficient to include this small amount. This disbursement was also passed in partial settlement in the probate court. All the circumstances considered, we do not feel the ruling should be disturbed.

As to the sums expended for taxes and in improvement and repairs of the property (assignment No. 8), no objection is made as to the reasonableness thereof, or that the property was not benefited thereby. We see no necessity for further discussion of this assignment, nor that of No. 28, which relates to the disbursement of $5.65 for recording mortgages which the guardian had taken in making investments.

Arguing assignment 42, appellant insists the guardian forfeited all right to compensation upon the theory he used the ward's funds to his own use. But we do not think the record justifies such a conclusion, and the chancellor evidently concluded likewise. The adjusted compensation certificate for $1,254.60, represented funds coming into the hands of the guardian just as the monthly payments from the Administrator of Veterans' Affairs, and the guardian was properly allowed commissions thereon. Walsh v. Walsh, supra. We do not interpret Alexander v. Alexander, 8 Ala. 796, as holding anything to the contrary.

We have considered the assignments of error argued in brief of appellant, and under the uniform rule all others are considered waived. Southern Railway Co. v. Cunningham, 112 Ala. 496, 20 So. 639; Henry v. Hall, 106 Ala. 84, 97, 17 So. 187, 54 Am.St.Rep. 22; Louisville & Nashville R. Co. v. Morgan, 114 Ala. 449, 22 So. 20.

Counsel representing the Administrator of Veterans' Affairs have also presented a brief in the capacity of amicus curiæ, and have included in their argument assignments not treated by appellant in brief. Under the above-noted rule, it is therefore apparent there need be no discussion of these added argued assignments. With due propriety, however, we may add that from a reading of the brief in connection with a study of the record, we are not persuaded these additional assignments would any more justify a reversal of the decree than those argued by appellant.

Upon the matter of the management of this estate, the guardian in his brief makes the following general summary: "It is not disputed that during the period of his guardianship, which was about eleven years, there was paid in to him, from the Veterans' Administration, the sum of $10,566.13, which was paid in largely in monthly installments ranging from $20.00 to $80.00 per month; that during this period, he has expended the sum of $8,979.24 for the maintenance and support of his ward and in and about the management of his estate. A net balance of $1,586.89 was accumulated for investment purposes, but the guardian on the date of his resignation had assets amounting to $4,374.39, which is $2,787.50 more than the net amount of money available for investment. In other words, during the time he has been guardian he was successful in nearly trebling the value of the net estate. For the sake of argument, let us assume that the guardian had made unauthorized loans and has not been as circumspect as he might have been in his management of the estate. We still believe that the rule of law applicable is that laid down in 28 Corpus Juris page 1143, paragraph 239, where it is said: 'Where the ward has suffered no actual loss, he has no right to recover damages from the guardian because the latter has made an unauthorized loan on real estate.'"

While counsel who file the brief amicus curiæ rather severely criticize the guardian and his administration of the trust, and make an earnest appeal that the court carefully guard the ward's estate, which has been "squandered ruthlessly," yet it is confessed therein that "no attempt is made to answer the brief filed by the attorneys for appellee, although we are convinced that the records do not support the contentions therein, nor do we concur in the propositions of law advanced." It is proper, therefore, to accept as correct the statements of appellee above set out as to the net result of the guardian's management of this estate, and that the ward has not only been cared for, but his estate enhanced and showing a substantial growth.

Conceding the guardian was not as circumspect in all matters as he perhaps should have been, yet, "in the long run," we think the record shows he has handled the funds of his ward to advantage, notwithstanding many years of a great and distressing financial depression. But we forego further discussion.

Upon our review of the record we find nothing justifying a reversal of the decree rendered, and it will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.