253 So.2d 183

Brock B. GORDON, as Guardian Ad Litem for Denise M. Brunson and Ramona T. Brunson, Minors

v.

Victor A. BRUNSON, as Guardian of the Estates of Denise M. Brunson and Ramona T. Brunson, Minors.

I Div. 615.

Supreme Court of Alabama.

Sept. 30, 1971.

Brock B. Gordon, Mobile, for appellants.

Michael E. Zoghby, Mobile, for appellee.

538

SIMPSON, Justice.

This is an appeal by the guardian ad litem from a final decree of the Probate Court of Mobile County rendered after hearing on a petition for final settlement of a guardianship estate of three minors on the occasion of the resignation of the guardian. The facts necessary to an understanding of this case are set out in the final decree rendered below, which in part is as follows:

"* * * The Court, on further consideration of only the proper, relevant and material evidence * * * finds as follows:

"1. That the Guardian during the course of his guardianship, and prior to December 29, 1960, received from several sources the sum of Seventy Thousand Nine Hundred Thirty Two and 48/100 ($70,932.48) Dollars as the joint property of the said three minors, which sum was deposited in a guardianship checking account;

"2. That on or about December 29, 1960, the Guardian withdrew the sum of Forty Thousand and no/100 ($40,000.00) Dollars from said checking account and deposited same in various savings accounts for said minors;

"3. That said Guardian retained the balance of Thirty Thousand Nine Hundred Thirty Two and 48/100 ($30,932.48) Dollars, plus federal and state tax refunds and a bank account credit transaction subsequently received by him, all totaling Five Hundred Fourteen and 02/100 ($514.02)

Dollars in the same nonincome producing checking account until October 15, 1968. After August, 1961 and until May, 1966, said guardian performed only minimum services to the estates, and he made no investments with said balance until on or about October 15, 1968. During such period of time said minors were in the custody of their natural mother who provided all of their maintenance and support. The only expenditures from principal until October 28, 1968, were for guardian bond premiums and after May, 1966, for Ramona's college expenses. On, to-wit June 17, 1968, no partial settlement of said guardianship having ever been filed, the court on its own motion cited said Guardian to make an accounting of his guardianship.

"4. The Court finds from the evidence that there was a surplus of money of the minors' which the guardian failed to invest, but which in the exercise of reasonable judgment, he should have invested, and that it was practicable for him to do so. The Court is especially impressed by the Guardian's own testimony which showed him to be a man of considerable business experience and knowledgeable about the use and non-use of money. Although the guardian made no unnecessary expenditures from the estates, and was generally frugal in conserving the principal thereof, the Court concludes that the Guardian failed to meet his duty to improve a very substantial portion of the estate to the best of his skill and ability. There is set forth below that amount of surplus money of the estates which the Court concludes that the Guardian should have invested on or before December 29, 1960.

"5. One of the contested items in the Guardian's offered accounting relates to his failure to collect a debt owed to the minors from Mobile Investment Club. It appears from the evidence that said minors' father had been an investing member of such Club and prior to his death established a credit therein of approximately One Thousand Eight Hundred Fifty Two and 80/100. The Guardian negotiated with Mobile In-

vestment Club as to the amount of said credit but it appears that the guardian was not in agreement as to the exact amount thereof. However, after such negotiations had been under way, Mobile Investment Club issued its check dated May 20, 1960 in the amount of One Thousand Eight Hundred Fifty Two and 80/100 to 'Estate of Ramon J. Brunson' and delivered same to said guardian but said check was never presented for payment nor was any other form of payment sought by the guardian from said Club. It now appears that said Mobile Investment Club has been disbanded. The Court concludes that the Guardian was negligent in failing to collect such debt and in failing to present said check for payment.

"6. That by negotiable instrument drawn on said minors' guardianship account and dated April 25, 1961, said Guardian paid to himself guardian fees in the amount of Nine Hundred Thirty and 19/100 ($930.19) Dollars without order of the Court therefor.

\*    \*    \*    \*    \*    \*

"8. The Court is of the opinion and finds that the failure of the Guardian to invest the surplus funds mentioned above (and more particularly described below) and to collect the debt referred to in Paragraph 5 hereof violated duties imposed on him by law and of which duties he had actual knowledge. The Guardian's former attorney advised him on at least two occasions by mail of his responsibility to make proper investments of the minors' funds and on at least one occasion by mail concerning the Mobile Investment Club check. The Court is also of the opinion and finds that the evidence offered by the Guardian in justification of his said actions is insufficient to persuade this Court that said minors should suffer the resultant losses, and it concluded that the Guardian is due to be held personally liable therefore [sic].

"9. The Court is persuaded by the evidence in this case that it should not determine such loss as measured on the entire Thirty thousand nine hundred thirty two and 48/100 ($30,932.48) Dollars initially re-

tained from investment, but that an allowance for retention of a reasonable amount should be made. Under the circumstances of this particular case, the Court in the exercise of its discretion, finds that it would not have been unreasonable for the Guardian to have kept uninvested for contingencies and the opportunity to participate in prudent or extraordinary investments approximately 15% of the original total amount received, thus the said guardian would have had Twenty thousand two hundred ninety two and 61/100 ($20,292.61) Dollars plus Forty thousand and no/100 ($40,000.00) Dollars or a total of Sixty thousand and two hundred ninety two and 61/100 ($60,292.61) Dollars invested and Ten thousand six hundred thirty nine and 87/100 ($10,639.87) Dollars or 15% of the estate in the checking account.

"10. The Court is also persuaded by the evidence in this case to further exercise its discretion and determine such loss as if such surplus funds had been invested at the same time and rate as the Forty thousand and no/100 ($40,000.00) Dollars which was invested on or about December 29, 1960. The evidence shows that such invested funds have yielded average yearly earnings of 4% thereon.

"11. Using the formula set forth in Paragraphs 9 and 10 hereof, the court concludes that Eleven thousand one hundred fifty three and 89/100 ($11,153.89) Dollars could have been left uninvested in said checking account and that the loss computed at the simple interest rate of 4% per annum on the said sum of Twenty thousand two hundred ninety two and 61/100 ($20,292.61) Dollars from December 29, 1960, to the date hereof (after making an allowance for earnings at 4% per annum on the Eighteen thousand and no/100 ($18,000.00) Dollars invested on or about October 15, 1968), amounts to Seven thousand seven hundred and 09/100 ($7,700.09) Dollars.

"12. Had the check from Mobile Investment Club been presented for payment on May 20, 1960 and those proceeds made a

part of the estate as they should have been, the earnings thereon at 4% per annum would now total Seven hundred forty one and 98/100 ($741.98) Dollars. The Court, therefore, concludes that the Guardian is also due to account for the principal amount of such check and the loss of earnings thereon, all of which total Two thousand five hundred ninety four and 78/100 ($2,-594.78) Dollars.

"13. The court will credit the total damages with Guardian's commissions amounting to Four thousand seventy three and 14/100 ($4,073.14) Dollars less Nine hundred thirty and 19/100 ($930.19) Dollars previously received and less Three hundred fifty nine and 13/100 ($359.13) Dollars as interest on commissions or the sum of Two thousand seven hundred eighty three and 82/100 ($2,783.82) Dollars it would have otherwise allowed to be paid from estates. Said credit is the net result after making deductions to account for prepaid commissions with interest thereon at 4% per annum.

"14. The Court also finds that a portion of the damages to the minors results from the claim against their estates by the Guardian's own attorney for an allowance for attorney fees to the extent that such claim includes services for representing the Guardian as to the contested issues herein. As to such services, the Court awards attorney fees to Michael Zoghby as attorney for petitioner in the amount of Eight Hundred and no/100 ($800.00) Dollars, which amount shall not be paid from said minors' funds but shall be assessed against the guardian."

The arguments made by appellant for reversal are as follows:

1. That the court erred in its finding that the guardian would have been justified in retaining the $10,639.87 in the checking account, contending that the law requires a guardian to invest *all* of the minor's estate. In other words, the contention is that the trial court should have gone further and required the guardian to pay interest on the

entire amount retained in the checking account from the end of 1960 to the date of the decree. This calls for a construction of Title 21, § 42, Code of Alabama, which provides in part:

"It is the duty of the guardian to manage the estate of his ward frugally, and to improve it to the best of his skill and ability. He must, if practicable lend out all surplus money of the ward. * * *"

█ The guardian ad litem takes the position that this statute requires the guardian to invest all of the money and that the court below erred in not so holding. We cannot agree with this contention. Obviously the legislature intended the word "surplus" used in this statute to have some meaning. It seems entirely reasonable to us that the meaning intended was the meaning placed on the word by the trial court— the amount over and above a reasonable amount held for contingencies. A guardian making investments for his ward is bound to act honestly and "'* * * exercise a sound discretion such as men of ordinary prudence and intelligence use in their own affairs. * * *'" Hall v. Esslinger, 235 Ala. 451, 179 So. 639. We think it not imprudent to hold some of the wards' money in a checking account for contingencies. The fact that no contingencies calling for the expenditure of this amount arose should not be held against the guardian. We think the court below did not abuse its discretion under the circumstances of this case in approving of the guardian's having kept some amount on checking account.

█ 2. The second argument advanced by the guardian ad litem goes to the amount of interest which the trial court required the guardian to pay on the amount not invested and on the amount not collected from the Mobile Investment Club. The guardian ad litem insists that the court erred in not requiring the guardian to pay over to the wards six per cent on these amounts, citing Title 9, § 60, Code of Ala. 1940, Rec. 1958 as requiring this. That statute defines the maximum amount of interest which may be

charged by lenders. The guardian ad litem argues that it defines the "legal rate" of interest in this state and hence the court should have required the guardian to pay the "legal rate". We cannot agree with this line of reasoning. We think it perfectly clear that the legislature in passing this statute was concerned with the amount of interest lenders may legally charge and certainly was not defining what fiduciaries must earn on monies held in trust. The yield which one can earn on investments is determined by the market place, and of course varies from time to time. In this case the evidence was that the guardian had earned four per cent on the monies invested over the years involved. The guardian ad litem offered no evidence that this yield could have been improved upon in the investments permitted guardians. What amount of interest then should the guardian be charged on the uninvested and uncollected funds? In Thompson v. Thompson, 92 Ala. 545, 9 So. 465, this question was presented thus:

"The single question presented by the record is, should appellant be charged, on his final settlement as guardian of William N. Richardson * * * with interest on the moneys of his ward, which were not invested or loaned out? The statute defines and fixes the duty of the guardian as to the management and improvement of his ward's estate, and as to making the surplus money productive. * * * He must, if practicable, lend out all surplus money of the ward. * * * The statute is declaratory of the ordinary duty, independent of statute, of a guardian to make his ward's funds productive by investing the surplus moneys so that they draw interest. Allen v. Martin, 36 Ala. 330. The statute restricts the discretion of the guardian as to the class or kinds of securities which may be taken, but does not constitute him the exclusive and final judge of the practicability of investing in such securities, or of their sufficiency. If he suffers his ward's funds to remain unemployed, when, by the exercise of reasonable diligence, they would have been safely invested * * * he is responsible for, at least, simple interest. * * *

"It may be difficult to lay down fixed rules by which to adjudge in each case the liability of the guardian for interest. It may, however, be stated as a general principle, that he is chargeable with interest, whenever it appears that he has been guilty of neglect in failing to put out his ward's money at interest,—has not exercised the prudence and diligence which a discreet man would have exercised in respect to the management of his own surplus money under like circumstances. McLean v. Hosea, 14 Ala. 194. The applicability of this principle is necessarily dependent upon the particular circumstances of each case. * * *"

As indicated in the above case, it may often be difficult to apply, but the rule seems to be that a guardian is responsible for interest on his ward's estate where he through neglect fails to invest to earn such interest. However, we think it equally clear that the rate to which the guardian should respond should be no more than the rate which the money could have earned had he discharged his duty to invest it. The early case of Bryant v. Craig, 12 Ala. 354, on the question of the liability of the guardian for interest on uninvested funds, said:

"* * * if he suffers the fund to be idle, when the terms of the trust, or the general law, requires it should be invested, so as to yield a profit, he is chargeable with simple interest; or if he is guilty of such gross neglect in the execution of the trust, as to be evidence of a corrupt intention, he may be charged with compound interest."

The trial court having heard the evidence determined that the guardian was guilty of neglect in failing to invest at interest the surplus funds in his hands and in failing to collect the debt due his wards from Mobile Investment Club. It charged him simple interest on these amounts. There was

no evidence of evil or corrupt intention, which under our cases is a prerequisite to charging him compound interest. We think the decree of the court in this regard is to be affirmed. However, we note in paragraph 11 of the trial court's decree that in computing the amount of interest to which the wards were entitled on the uninvested surplus, the court concluded that the guardian was answerable in the amount of $7,700.-09. This amount was arrived at by calculating interest on $20,292.61 at 4% simple for 9¾ years, but deducting from the total the amount of interest on $18,000 from October, 1968 to the date of the decree. Actually, the amount should have been calculated from December 29, 1960 to August, 1969, the date of the decree, or 8¾ years, instead of 9¾ years, reaching a total amount due of $7,102.37. Although neither party to this appeal mentions this obvious mathematical error we think it incumbent that we modify the decree rendered below in this respect. The Supreme Court may render judgment on appeal in contest of a guardian's final settlement where the evidence is without substantial dispute. Bean v. Bean, 217 Ala. 93, 114 So. 692.

3. We turn now to the uncollected $1,-852 due the guardianship estate from the Mobile Investment Club. The trial court found from the evidence that the guardian was negligent in not presenting the check in that amount for payment. The check was dated May, 1960. The trial court concluded that the guardian was answerable for interest at 4% simple on this amount from that date to the date of the decree. Again, however, the court below apparently miscounted the years the money remained uninvested. Had the check been presented for payment and the money recovered in May, 1960, and then invested at 4%, it would have earned at the rate of 4% $44.38 in the year 1960, and $648.20 in the 8¾ years intervening to the date of the decree for a total of $692.58, at 4% simple interest, making a grand total due the wards in this matter of $2,544.58. Paragraph 12 of the court's decree is modified to this extent.

4. The next item in contention concerns the $930.19 which the guardian prepaid himself in commissions in April, 1961. The trial court appropriately concluded that the guardian was unauthorized in prepaying these commissions, but calculated interest on this amount at 4% simple to the date of the decree, again apparently miscalculating the time. The court erred in two respects here. First, the interest due on this amount should have been compounded. In McGowan v. Milner, 195 Ala. 44, 70 So. 175, this court held:

"Where a guardian uses his ward's funds, or lends them to a firm of which he is a member, the interest must be *compounded annually*." (Emphasis added.)

It was noted in that case and not disputed here that the guardian has no right to deduct any sum for compensation until it has been allowed by a decree of the court. In Cunningham v. Cunningham, 215 Ala. 484, 111 So. 208, the court said that a guardian must be held to the same accountability as if he had personally made use of the ward's funds where the guardians loaned the ward's money to a corporation of which they were the managing officers. The decision went on to say that compound interest at 8 per cent per annum (the then legal rate) must be charged on such money, saying:

"Making such loan without security, outside the law and in breach of trust, he must * * * be regarded in the same position as if he had appropriated the money to his own use. While a severe rule, perhaps, it is sanctioned by experience and could not be relaxed without exposing the helpless to the risk of losses which the law has expressly declared shall not be incurred."

We think it clear therefore that the trial court erred in charging only 4% simple interest on the wards' money wrongfully advanced by the guardian to himself, and should have calculated such interest at the rate of 6% per annum, compounded annual-

ly from date of the advance to the date of the decree, for a total amount of $1,597.62.

5. We now come to the question of commissions due the guardian. The guardian ad litem argues that the court below erred in the construction given Title 21, §§ 143 and 144, which provide:

"§ 143. * * * A guardian is entitled for his services to commissions of two and one-half percent on his disbursements, and two and one-half percent on his receipts, and on final settlement an allowance must be made of actual expenses necessarily incurred by him; * * *.

"§ 144. * * * Upon the final settlement of a guardianship, the guardian, if he has not been guilty of fraud or gross negligence must be allowed reasonable commissions, not exceeding two and one-half percent, on the value of all personal property or choses in action surrendered to the ward, or to his personal representative, or on the amount of money paid or decreed to be paid to the ward, or to his personal representative, or to a succeeding guardian; but if the value of such personal property, or choses in action, and of such money exceeds twenty thousand dollars, the commissions on the excess must not be more than one percent."

The first argument advanced by the guardian ad litem asserts that the court erred in considering as "receipts" all monies coming into the guardianship estate, but rather should have considered only such monies as the guardian earned on the fund coming into his hands. There is no merit to this contention. The word "receipts" as used in these statutes should carry the same meaning as the same word has been given in the statute dealing with commissions to which executors and administrators are entitled. It has traditionally been defined to mean the value of the estate coming into the hands of the fiduciary. See Kenan v. Graham, 135 Ala. 585, 33 So. 699.

The guardian ad litem contends that the court below erred in calculating the guardian's commissions as follows:

Under § 143:

| | |
|---|---|
| Receipts | $86,351.94 |
| Disbursements | 10,847.82 |
| Commissions calculated at 2½% ____ | $2,430.00 |

Under § 144:

Commissions on final settlement:

| | | |
|---|---|---|
| Ramon's share | $20,000.00 at 2½% | |
| | 3,965.08 at 1% | |
| | Total ____ | 539.65 |
| Denise's share | $20,000.00 at 2½% | |
| | 5,185.85 at 1% | |
| | Total ____ | 551.86 |
| Ramona's share | $20,000.00 at 2½% | |
| | 6,353.19 at 1% | |
| | Total ____ | 563.53 |
| | Grand Total ____ | $4,085.04 |

We think the court below misconstrued the commissions due the guardian under § 144. We agree with its construction of § 143 commissions. The guardian ad litem says that the court erred in allowing 2½% on the first $20,000 designated as Denise's and Ramona's shares and should have treated the total of the sums going to the successor guardian together allowing 2½% on one $20,000 and 1% on the balance, which would be $31,531.04. The position of the appellant is that the guardian was entitled to 2½% on $40,000 (the first $20,000 going to the ward who had attained majority and the first $20,000 going to the successor guardian). We think this position is erroneous, too. The guardian had a fund to be disbursed on final settlement of $75,504.12. We think under the provisions of § 144 he was entitled to no more than 2½% on the first $20,000 of this amount, plus 1% on the balance, for a total of § 144 commissions of $1,055.04. The amount of commissions should not depend upon the number of persons to whom the funds are delivered on final settlement. There was but one guardianship estate with three wards being the joint owners thereof. The interpretation placed on Title 21, § 144 by the trial court would

allow 2½% on $60,000 in clear violation of that statute which limits the commissions to 2½% on $20,000, plus 1% on the balance.

The guardian is entitled to $2,430.00 (§ 143 commissions) plus $1,055.04 (§ 144 commissions) for a total commissions of $3,485.04, against which sum he should be charged with the commissions improperly paid to himself in advance of $1,597.62 ($930.09 plus interest at 6% from the date thereof to the date of the decree) or for net commissions of $1,887.42.

We find no further fault with the trial court's decree. As herein modified the same is affirmed.

Modified and affirmed.

HEFLIN, C. J., and MERRILL, BLOODWORTH, and McCALL, JJ., concur.

Supreme Court of Alabama.