Lenore Williamson BURGESS, Individually and as guardian of the Estate of Ethel Jackson Williamson, a non compos mentis, Plaintiff-Appellee,

v.

Warren Jackson WILLIAMSON, Defendant-Appellant.

No. 73–3162.

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1975.

Rehearing Denied Feb. 20, 1975.

Jack Crenshaw, M. Waller, Montgomery, Ala., for defendant-appellant.

James W. May, Birmingham, Ala., for plaintiff-appellee.

Before DYER, MORGAN and RO-NEY, Circuit Judges.

RONEY, Circuit Judge:

This appeal arises from an Alabama diversity case in which a sister sued her brother for an accounting and damages as to the handling of their mother's financial affairs. The parties are now co-guardians of their incompetent mother's estate, but the son's activities, which were the subject of his sister's complaints, involve a long period prior to the establishment of the guardianship, during the years in which the defendant invested funds for his mother. Basically, the sister alleged that her brother had commingled their mother's funds with his own, had not rendered a proper accounting therefor, and that he had personally profited from certain transactions contrary to his fiduciary obligations. The case was vexatiously complicated for all involved because of the totally inadequate records maintained by the son, an attorney, and the free commingling of his and his mother's funds. On the son's appeal from a substantial defeat by his sister in the trial court, we affirm in part and reverse in part.

Sometime after the death of his father in 1953, Warren Williamson agreed to loan sums of money for his mother, Ethel Williamson, to remit interest on such sums to his mother, and to collect the principal of each loan when due. The mother also made personal loans to her son from time to time. A large volume of a variety of transactions occurred until January 9, 1970, when the son and his sister, Lenore Williamson Burgess, who sues individually and on behalf of the estate, were appointed co-guardians of the estate of their mother, who by that time was incompetent. The devastating effect of the son's failure to keep proper records of his mother's affairs surfaced when the sister paid approximately $20,000.00 to a firm of accountants to unravel the matter and was told that the books were hopelessly garbled. The district court held that the son had, for all intents and purposes, used his mother's funds as his own.

There is no point in our reciting the voluminous facts which were developed in a magistrate's hearing that lasted in excess of twenty days, except insofar as they are necessary for an understanding of our review of each issue submitted to us on the appeal. The magistrate's hearing involved an accountant, special master's report, and extensive objections filed thereto. The necessary facts will be revealed as we discuss each of the five decisions of the district court, which we are asked to review, to wit: (1) charged son with compound interest on those funds which mother had entrusted to him to loan on her account; (2) charged son with compound interest on a certain personal loan known as the Piggly Wiggly loan; (3) established a constructive trust in favor of the estate upon certain real property, the Fred Waller property; (4) awarded sister the sum of $50,000.00 as compensatory damages; and (5) awarded sister the sum of $20,000.00 as expert witness fees. We are not unmindful of the manifold difficulties which the district court faced during those years in which the instant litigation was pending before it.

1. *Compound Interest Award on Trust Funds*

On September 19, 1957, mother, feeling that she had a "serious ailment," composed a letter to her four children, including son and sister, in which she made certain statements concerning her financial situation. Mother stated that, as of September 19, 1957, she had advanced son the sum of $83,100.00. In his report, the magistrate accepted this figure, which included the $7,500.00 Piggly Wiggly loan, as an account stated. Finding that son had failed to keep adequate records of mother's loans, the magistrate stated that "in fiduciary accounting, the compound interest method may be used in the absence of books and records sufficient to support an accounting," and that six percent was a

reasonable rate at which to compound the interest annually. Therefore, the magistrate used the sum of $83,100.00 as the opening balance upon which to compound the interest, with the ordinary adjustments for monies received and disbursed, to arrive at the final sum of $117,687.88, for which the district court held son accountable.

Neither party to this appeal cites this Court to any Alabama law or court decision which stands for the proposition that, where a non-court appointed fiduciary cannot produce adequate books or records, the compound interest method is a legally acceptable method of determining accountability. Both parties rely, however, on a series of decisions by the Supreme Court of Alabama which deal with guardian-ward situations. These cases, including Bryant v. Craig, 12 Ala. 354 (1847), and Gordon v. Brunson, 287 Ala. 535, 253 So.2d 183 (1971), hold that, where a guardian so grossly neglects his duties as to evidence a corrupt intention, he may be charged with compound interest. The plaintiff asserts that the defendant had nothing but corrupt intentions in managing their mother's funds. Defendant claims that the facts do not support such a finding as to bring the case within these authorities.

In particular, both plaintiff and defendant argue the applicability of Gordon v. Brunson, *supra,* to the case at bar. In *Gordon,* where a guardian failed to invest his ward's funds as required by law and also prepaid himself commissions out of his ward's estate, the trial court charged the guardian simple interest on both the uninvested funds and the prepaid commissions. The Supreme Court of Alabama affirmed the award as to the uninvested funds, holding that a mere failure to invest did not support a finding of corrupt intention. As to the prepaid commissions, however, the court held the guardian accountable for six percent interest per annum, compounded annually. The court in *Gordon* based its decision to compound interest on the case of McGowan v. Milner, 195 Ala. 44, 70 So. 175 (1915), in which the Supreme Court of Alabama held that

[W]here a guardian uses ·his ward's funds, or lends them to a firm of which he is a member, the interest must be compounded annually.

70 So. at 177. Sister argues that son used mother's monies as his own, while son asserts that his actions do not evidence a corrupt intention or, at least, that the magistrate made no specific findings on this point.

While the cases cited by the parties on appeal offer some helpful guidelines for an *Erie* review, they are not factually identical to the case at bar. Although son was appointed co-guardian of the mother's estate on January 9, 1970, the instant action is to determine son's accountability to mother for the period of time from 1953, when he first began handling her investments, until his court appointment in 1970. Thus, during the seventeen years or so in question, son was not acting as a court-appointed guardian as were the defendants in the *Craig, Gordon,* and *McGowan* cases. We must determine, therefore, whether the Alabama courts would apply a different standard against a son-fiduciary who manages his mother's funds from that imposed against a court-appointed guardian, who, in large part, must administer his ward's estate according to statutory guidelines.

There is no one general principle of law which controls whether or not a fiduciary will be chargeable with compound interest upon the funds entrusted to him. In 1853, the Supreme Court stated in Barney v. Saunders, 57 U.S. (16 How.) 535, 14 L.Ed. 1047 (1853),

On the subject of compounding interest on trustees, there is, and indeed could not well be, any uniform rule which could justly apply to all cases. When a trust to invest had been grossly and wilfully neglected; where the funds have been used by the trustees in their own business, or profits made of which they give no account, interest is compounded as a punishment, or as a measure of damage for undisclosed profits and in place of them.

57 U.S. (16 How.) at 542.

The theory that compound interest should be assessed against a trustee as punishment for certain breaches of trust has been discarded by the Restatement (Second) of Trusts in favor of the theory that trustees should not be allowed to profit from their unauthorized use of trust funds. Section 207 of the *Restatement* indicates that a trustee, as a general rule, will be charged with simple interest and not compound interest, unless

(1) he has received compound interest,
(2) he has received a profit which cannot be ascertained but is presumably at least equal to compound interest or
(3) it was his duty to accumulate the income.

A close reading of the Alabama cases which charge guardians with compound interest, however, suggests that the Alabama courts have so far assessed compound interest primarily to punish the guardian for his "corrupt intent," under a Barney v. Saunders approach, rather than to recapture profits for the ward, under a *Restatement* theory.

■ Technically, son was neither a guardian nor a trustee in his relationship with his mother. In the district court's terms, son was mother's "fiduciary" in the management of her investments. As a fiduciary son was unquestionably subject to essentially the same basic fiduciary duties as a guardian, a trustee, or any other fiduciary, however they might be relaxed because of the family relationship. Yet, the district court, adopting the magistrate's report, specifically found that son kept inadequate books and records of mother's loans and commingled her monies with his. On at least two occasions, son collected compound interest on loans made on mother's account.

■ Under an *Erie* extension of the case law which charges guardians with compound interest when they appropriate their wards' funds to their own use or so grossly neglect their duties as to evidence corrupt intention, we think that the district court correctly decided that the Alabama courts would assess son

with compound interest on those funds which he invested on mother's account. Even under the *Restatement* theory, the fact that son on occasion collected compound interest might well justify an assessment of compound interest against son, especially in light of the garbled state of his business records.

2. *The Piggly Wiggly Loan*

In 1954, mother loaned son the sum of $7,500.00 to purchase a part interest for himself in a Piggly Wiggly grocery store. The check which mother transferred the Piggly Wiggly funds to son bore the notation, "Personal loan for 3 yrs to Jack (Piggly Wiggly) 2% int." In the September 18, 1957, letter, mother stated that she had loaned son a total of $83,-100.00, including the Piggly Wiggly loan. Therefore, when the magistrate accepted the $83,100.00 figure as an account stated and compounded the interest thereon, he necessarily charged son with compound interest on the Piggly Wiggly loan since 1957.

In his report, which the district court adopted *en toto,* the magistrate specifically discusses the Piggly Wiggly loan. Relying upon Gordon v. Brunson, 287 Ala. 535, 253 So.2d 183 (1971), the magistrate states,

In the absence of the most convincing evidence to the contrary, a personal loan to a fiduciary is chargeable to him with interest compounded annually at the legal rate, in this case, six per cent.

The facts of the *Gordon* case, however, do not show it to support a charge of compound interest upon the personal loan in the case *sub judice.* In *Gordon,* the guardian had prepaid himself commissions out of his ward's estate. On its facts, the *Gordon* case clearly does not apply to the situation at bar where a competent mother voluntarily made a personal loan to her son, prior to his appointment as a guardian of her estate, at a stated rate of interest. Unlike the guardian in *Gordon* who misappropriated his ward's funds, son is guilty of no wrongdoing in borrowing funds from his

mother to purchase an interest in the grocery store. The fact that son acted as a fiduciary in loaning other monies on mother's account does not color the character of the Piggly Wiggly loan, a personal loan from a mother to her son to help him in his business ventures.

Neither appellant nor appellee has cited any Alabama decision which would sustain the charge of compound interest on the Piggly Wiggly loan in the case at bar. Nor has either party cited to this Court any controlling Alabama statute. Sister argues that Title 21, Section 43, Code of Alabama (1940) (Recomp.1958) is applicable to the Piggly Wiggly loan. The only loans which fall within the purview of this statute, however, are those which a court-appointed guardian makes on behalf of his ward with his ward's money. Inasmuch as son was not his mother's legal guardian during the period of time in question, Title 21, Section 43, Code of Alabama (1940) (Recomp. 1958) does not control this case.

■ In the absence of a statute or an agreement, either express or implied, the law of Alabama is clear that the payee of a note has no right to charge and collect compound interest from the payor. Smith v. Yancey, 198 Ala. 221, 73 So. 477 (1916). We reverse the decision of the district court in this regard. The question remains, however, as to what rate of simple interest, if any, should be applied to the $7,500.00 loan.

The original terms of the Piggly Wiggly loan, as noted on the January 1954 check by which mother transferred the funds to son, were that the loan was for a period of three years at a rate of interest of two percent per annum. In September of 1957, however, some nine months after the date when the loan was due, mother discussed the Piggly Wiggly loan extensively in her September 19 letter. After stating that son had insisted upon paying interest on the loan, mother continued,

So I accepted his terms—but with a mental reservation that at the end of three years, I would return the inter-

est to him, or either return the interest as gifts, along.

. . . . .

If in some way, Jack has paid this interest, some way that my records do not show, then he is to be reimbursed from my funds. . . . If he has not, he is not to do so. I never intended to accept it.

The magistrate interpreted mother's letter to provide for the forebearance of any interest from January 1954 to the date of the letter. From that date, September 19, 1957, to January 9, 1970, the district court, in approving the magistrate's report, charged interest compounded annually at the rate of six percent.

■ The September 19 letter is the only evidence of mother's intention as to what interest, if any, son should pay on the Piggly Wiggly loan. Not only did mother state that she never intended to accept any interest from her son, but she specifically commented that son's use of the $7,500.00 without the charge of interest would be fair compensation to him for handling her loans:

I figured it this way: if invested at six per cent, this $7,500.00 would bring me $450.00. It became early evident that Jack did not have the time to handle my loans, and make a living for himself, so that I felt that in the interest of harmony between us and in justice to all of us, I should explore the possibilities of relieving him of this burden. So I consulted Mr. John Curry of The First National Bank of Montgomery as to what he could do for me.

I found that I could invest the money in savings or establish a revocable trust, the bank investing these funds. In February 1954, I could count on a return of four percent at most, either way. I had the choice between relieving Jack now, or lessening the amount of inheritance of you all. At the time, I chose to let Jack continue to handle the loans as long as I could.

Mr. Curry wrote me that the charge for investment (trust) would be about ten per cent of the income. Therefore, I figured that the $450.00 above would be, in a way, a fair payment to Jack for his handling of my loans.

It is undisputed that son continued to loan money on his mother's account from September 19, 1957, until his appointment as co-guardian of her estate in 1970. The only conclusion which reasonably can be drawn from mother's letter is that, although she expected son to repay the loan, she did not intend son to pay any interest on the sum of $7,500.00. The son should be liable to the estate of mother for the repayment of the principal of the Piggly Wiggly loan, without interest.

### 3. Constructive Trust on Fred Waller Property

In 1962, son made a series of loans to Fred Waller, an old business associate, on mother's account. The loans totalled approximately $25,000.00. Although the facts surrounding the Waller loans are monumentally confusing, it is clear that Waller, as security for at least $9,500.00 of his indebtedness, assigned his statutory right of redemption to certain property to son in August of 1962. In December of the same year, son redeemed the real estate with the proceeds of a mortgage on the property in the sum of $40,000.00. Son took title to the property in his own name and obligated himself on the mortgage note. The district court found that son held the title to the Waller property as constructive trustee for the estate of mother.

■■■ A constructive trust is a creation of equity which operates to prevent unjust enrichment. The Supreme Court of Alabama has defined a constructive trust as

. . . such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it.

Putnam v. Putnam, 274 Ala. 472, 150 So.2d 209, 212 (1963). A court of equity is bound by no unyielding formula in decreeing a constructive trust, and the equity of the situation must shape the measure of relief. Sims v. Reinert, 285 Ala. 658, 235 So.2d 802 (1970).

■■ In a fiduciary relationship, a fiduciary who improperly competes with a beneficiary and thereby acquires title to property will hold that property upon a constructive trust for the beneficiary.

The principle, however, goes further than this and applies even where the interest purchased by the fiduciary for himself is not an interest in property of the beneficiary entrusted to him, or property which he has undertaken to purchase for the beneficiary, provided that the property which he purchases for himself is sufficiently connected with the scope of his duties as fiduciary so that it is improper for him to purchase it for himself.

5 Scott on Trusts § 504, p. 3558 (1967). Son, in exercising Waller's statutory right of redemption, purchased property which was closely connected with his duties to mother to lend her funds upon adequate security. Under such circumstances, even though son had no duty or power to acquire real estate for his mother, the district court found that it was improper for son to purchase the realty in question for himself. The district court was unpersuaded by son's argument that, because he personally guaranteed his mother's loans, he had breached no duty to her by taking title to the Waller realty in himself.

■■■ Under the laws of Alabama, the question of whether or not a constructive trust arises in a certain situation is one of fact. Sims v. Reinert, supra. The district court found that the son, as a fiduciary, first used mother's funds to acquire Waller's statutory right of redemption and then exercised that right in his personal capacity. On review, we have carefully examined the voluminous record in this case and we conclude that the finding of the district

court in this regard is not clearly erroneous.

■ Although we affirm the constructive trust on the Waller property in favor of mother, we are concerned that sister, as co-guardian for mother's estate, receives a double recovery under the present terms of the district court's order. The mother's estate not only recovers the principal of the Fred Waller loans, the money with which the right of redemption was acquired, with six percent interest thereon compounded annually, but she also receives legal title to the redeemed realty. Such a result is clearly inequitable. Therefore, we remand this cause to the district court with instructions that sister, as co-guardian for the estate of mother, be allowed to elect whether the estate will accept repayment of the principal of the loans with six percent interest compounded annually or will take title to the Fred Waller property. Although son is a co-guardian of mother's estate, the district court will not allow him to participate in or present opposition to any election which sister should make on behalf of the estate.

If sister elects to receive title to the realty, then mother's estate, as the district court stated in its order, will take the property subject to the rights of the mortgagee in same. Further, if sister elects to take title to the real estate, son will be allowed to prove any credit to which he would be entitled upon a conveyance of the property to the guardianship estate.

### 4. Award of $50,000.00 Damages

The district court awarded sister the sum of $50,000.00 as damages against son to partially compensate her for the filing and prosecution of the instant action. Finding that son had failed to keep adequate records and to render a fiduciary accounting to sister, the district court concluded that son's breaches of his fiduciary duty were such as to amount to either actual or constructive fraud. The court held that $50,000.00 was reasonable compensation to sister in the case sub judice, in light of the court's personal knowledge of the manner in which the action had been prosecuted. At least in substantial part, the court's award was based upon the magistrate's finding that $43,100.00 was a reasonable attorney's fee for sister.

■ Under Alabama law, attorney's fees are not ordinarily assessable as an item of damages unless provided for by law or by contract. As the Supreme Court of Alabama stated in Hartford Accident & Indemnity Co. v. Cosby, 277 Ala. 596, 173 So.2d 585 (1965),

. . . the general rule is there can be no recovery as damages of the expenses of litigation or attorney's fees paid by the opposing party, in the absence of a contractual or statutory duty, other than in a few recognized grounds of equity principles authorizing such liability.

173 So.2d at 595. Accord, Pappas v. City of Eufaula, 282 Ala. 242, 210 So.2d 802 (1968); Inland Mutual Ins. Co. v. Hightower, 274 Ala. 52, 145 So.2d 422 (1962); Moss v. Winston, 223 Ala. 512, 137 So. 303 (1931); Wilks v. Wilks, 176 Ala. 151, 57 So. 776 (1912).

Sister argues that the district court's award may be affirmed under either (1) the "punitive damages" exception to the general rule regarding an award of attorney's fees or (2) the equitable concept that a "defaulting trustee" may be liable for the costs of an accounting. Son contends that no Alabama court has ever applied the two theories of recovery which sister espouses, but he admits that an award of attorney's fees against the mother's estate may be proper under Title 46, Section 63, Code of Alabama (1940) (Recomp.1958). We review these arguments independently to determine if there is a sufficient legal basis under Alabama law to support the assessment of attorney's fees as compensatory damages against son in the case at bar, or against the estate.

■ The "punitive damages" exception to the general rule established by Cosby, Pappas, Hightower, Moss and

*Wilks* is that, in cases where punitive damages are or can be awarded, attorney's fees may be included in the estimation of the amount of damages. *See* 22 Am.Jur.2d Damages § 167. In the case *sub judice,* the district court apparently premised its award of attorney's fees as *compensatory* damages upon this exception. Although the district court did not award sister punitive damages, the court found the conduct of son to be ". . . fraudulent to the extent that damages must be awarded the plaintiff for the purpose of partially compensating her for the filing and prosecution of this action."

 Sister asserts that the Supreme Court of Alabama impliedly recognized the "punitive damages" exception in Moss v. Winston, *supra,* where the court, while holding that expense of litigation resulting from breach of contract was not recoverable, quoted from Corpus Juris, as follows:

> "Apart from the sums allowable and taxed as costs, there can, as a general rule, be no recovery as damages of the costs and expenses of litigation or expenditures for counsel fees. In cases of civil injury or breach of contract, in which there is no fraud, wilful negligence, or malice, the courts have considered that an award of the costs in the action is sufficient to cover the expenses of litigation and make no allowance for time, indirect loss and annoyance."

137 So. at 304–305. We are cited to no case in which an Alabama court has ever recognized, much less applied, such exception to an action for accounting or an action for damages based on a breach of fiduciary duty. In fact, neither sister in her brief nor the district court in its opinion cites any case in which an Alabama court has assessed attorney's fees as an item of damages under this exception to the general rule. We think the district court's award cannot be affirmed on the basis of the "punitive damages" exception.

 Second, the sister argues for affirmance under principles applied to a "defaulting trustee." Broadly stated, the "defaulting trustee" doctrine allows the assessment of costs against a trustee in an action brought by a beneficiary to compel the trustee to make a final settlement of his administration of the trust. The district court invoked this equitable doctrine when it cited IV Bogert on Trusts § 962; I Perry on Trusts (7th ed.) § 903; and Buder v. Franz, 27 F.2d 101 (8th Cir. 1928), as authority for its decision to award sister compensatory damages in the case at bar. In pertinent part, Section 962 of Bogert on Trusts reads,

> The failure to make and preserve records may also be a ground for removal of the trustee, or denying or reducing his compensation, or for charging him personally with part or all of the costs of the accounting.

Stressing the fact that son failed to keep adequate records and failed to render an accounting, sister contends that the district court properly assessed her attorney's fees as a measure of compensatory damages against son as a "defaulting" fiduciary. She relies heavily upon certain language of the Supreme Court of Alabama in Murphy v. Merchants Nat. Bank of Mobile, 240 Ala. 688, 200 So. 894 (1941). Taken out of context, the statement of the court in *Murphy* is helpful to sister:

> It has been recognized that costs necessarily incurred by the trustor or cestui que trust to compel a defaulting trustee to make a final settlement of his administration of the trust should be assessed against the trustee who has wrongfully necessitated these expenditures on accounting.

200 So. at 905. A close review of the *Murphy* decision, however, reveals that the language upon which sister pins her hopes is merely dicta, an explanation of the equitable principle behind an Alabama statute, now Title 11, Section 69, Code of Alabama (1940) (Recomp.1958), which provides that a defendant may recover full costs if he proves the plaintiff has intentionally taken or reserved usurious interest.

Even assuming that the *Murphy* case would support an award of "expenditures on accounting" against son in the instant proceeding, we are referred to no Alabama decision in which a court has assessed attorney's fees as an item of such expenditures under the "defaulting trustee" doctrine. We cannot affirm the district court's award against the son under the "defaulting trustee" doctrine.

It may be, however, that Title 46, Section 63, Code of Alabama (1940) (Recomp.1958), will support the assessment of attorney's fees as costs against the estate fund.

Title 46, Section 63, reads as follows:

In all suits and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust, . . . the court having jurisdiction of such suit or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust, . . or any party in the suit or proceeding, and is authorized to tax as a part of the costs in such suit or proceeding such reasonable attorney's fee, which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court and to be a lien on the several parts in case of partition in kind.

As the Supreme Court of Alabama noted in Penney v. Pritchard & McCall, 255 Ala. 13, 49 So.2d 782 (1950), the statute is largely an enactment of the equitable principle that

. . . a complainant in equity, who at his own expense has maintained a successful suit for the preservation protection or increase of a common fund or of common property, or who has *created at his own expense or brought into court* a fund in which others may share, may have paid to him, or sometimes directly to his attorney, an attorney's fee for such services.

49 So.2d at 784. In that case, the statute was held applicable to a guardianship proceeding.

■ The allowance of attorney's fees under this statute, however, is solely on the basis of benefits inuring to the common estate. Clark v. Clark, 287 Ala. 42, 247 So.2d 361 (1971).

We reverse the district court's assessment of compensatory damages against the son, but remand the cause for the district court's consideration of the aforesaid statute. Such a consideration necessarily will include a determination of the reasonableness of the attorney's fees claimed by sister, as the record does not reveal any proper findings to support a decision that $43,100.00 was a reasonable attorney's fee. To the extent that sister enhanced the estate of mother by her action in bringing this suit, however, sister should receive reasonable attorney's fees from the ward's estate.

### 5. *Award of $20,000.00 as Expert Witness Fees*

■ The district court, in its order filed October 26, 1972, awarded sister the sum of $20,000.00 as expert witness fees for the services of an accountant. Based upon our previous decisions in Baum v. United States, 432 F.2d 85 (5th Cir. 1970), United States v. Kolesar, 313 F.2d 835 (5th Cir. 1963), and Green v. American Tobacco Co., 304 F.2d 70 (5th Cir. 1962), we reverse the district court's award. As we held in the aforementioned cases, a district court has no authority under 28 U.S.C.A. § 1821 to tax costs for compensation to an expert witness in excess of the statutory attendance per day, mileage and subsistence allowance.

In Henning v. Lake Charles Harbor & Terminal District, 387 F.2d 264 (5th Cir. 1968), we held that the federal courts in a diversity suit would apply a state statute which provided that expert witness fees could be taxed as costs in an eminent domain proceeding on the theory that the statute created a substantive right in favor of the landowner. Al-

though Alabama has a statute which governs expert witness fees, Title 7, Section 366, Code of Alabama (1940) (Recomp.1958), it does not provide that such fees shall be taxed as costs. We are bound to follow our previous decisions in *Baum, Kolesar,* and *Green.* Accordingly, we reverse the district court's award of $20,000.00 as expert witness fees to sister for accountant's services.

The costs of this appeal shall be equally divided between the guardianship estate and the appellant.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.